Shelby N. Price, Esq.
Wyoming Attorney No: 7-6055
**MCDONOUGH LAW GROUP**
1635 Foxtrail Dr.
Loveland, CO 80538
Tel: (970) 776-3311
Email: shelby@mcdonoughlawgroup.com

Of Attorneys for Plaintiff

Scott Olheiser, Esq.
Wyoming Attorney No: 6-3154
**MCDONOUGH LAW GROUP**
300 Main Street, Suite 102
Grand Junction, CO 81501
Tel: (970) 776-3311
Email: sjo@mcdonoughlawgroup.com

Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **RJ WYLD LLC**, a Wyoming limited liability company, | |
| Plaintiff and Counterclaim Defendant, | Civil Case No. 24-CV-00186-KHR |
| v. | |
| **WYLD ADVENTURES LLC**, a Wyoming limited liability company, | |
| Defendant and Counterclaim Plaintiff. | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. Rule 65 and Local Civil Rule 7.1(2) Plaintiff, RJ Wyld, LLC, d/b/a Wyld 'n Pretty, ("Plaintiff" or "Wyld 'n Pretty"), submits this Memorandum of Law in support of its Motion for Preliminary Injunction against the Defendant, WYLD Adventures LLC ("WYLD Adventures" or "Defendant").

### INTRODUCTION AND PRELIMINARY STATEMENT

Approximately six years ago, Rockie Sadler ("Rockie") developed the concept for a specialty boutique store in her hometown of Sheridan, Wyoming. In June 2019, she selected the

name Wyld 'n Pretty and devoted significant effort to designing a unique, professional, and visually appealing logo with an embedded reference to Wyoming.  Initially, Wyld 'n Pretty offered specialty clothing and branded "Wyld" logo apparel, operating exclusively as an online store. The online business proved successful, leading Rockie to open a brick-and-mortar location in downtown Sheridan in November 2021. To complement the physical storefront, she expanded the product offerings to include a variety of western-themed items, such as fashion and trucker hats, skincare products, candles, and jewelry. *See generally Affidavit of Rockie Sadler* and Exhibits attached thereto ("*Sadler Aff.*").

Rockie knew that she needed to protect her successful entrepreneurial concept, and at the inception of Wyld 'n Pretty, she obtained a Wyoming trademark which was issued on June 3, 2020. She also obtained a Wyoming trade name registration.  Subsequent to obtaining the Wyoming registrations, Rockie also obtained a Federal Trademark which was issued in September of 2023 and used in commerce since September of 2019.  *Id.,* at ¶¶ 4 and 5.

In July 2022—approximately eight months after Rockie opened her original store in downtown Sheridan—another business, WYLD Adventures, opened.  Concerned about the striking similarity to her business concept and registered mark, Rockie began researching WYLD Adventures and its marketing efforts. At first glance, WYLD Adventures appeared to focus primarily on outdoor apparel and goods.  *Id.,* ¶ 12.  WYLD Adventures does not have a federal or State of Wyoming registered mark, nor does it have any pending registrations.  Def.'s Answer & Countercl. ¶ 25, *RJ WYLD, LLC., v. WYLD ADVENTURES, LLC.,* No. 24-CV-00186-KHR (D. Wyo. 2024).

This initial impression proved to be inaccurate. In the months following its opening, WYLD Adventures expanded its offerings to include many of the same products as Wyld 'n Pretty, including fashion clothing. *Sadler Aff.,* at ¶ 13.

This unauthorized expansion into similar product lines raises significant concerns regarding brand identity and consumer confusion. Trademark law, governed by the Lanham Act enacted by Congress in 1946, 15 U.S.C. §§ 1051 et seq., provides protections against such issues by ensuring that federally registered marks are safeguarded from unauthorized use that may mislead and/or confuse customers. As discussed herein, customers have voiced concerns about confusion between the businesses.

Rockie has made significant efforts to compel WYLD Adventures to cease using her legally protected trademarks. These efforts have included email correspondence, standard mail, and certified mail. *See Sadler Aff.* at ¶¶ 15-17. Despite these attempts, WYLD Adventures has failed to comply, leaving Rockie with no choice but to seek this Court's intervention to safeguard her trademark from past, ongoing, and future harm to her established brand.

## ARGUMENT

Plaintiff's *Motion* and supporting documentation demonstrate that an order enjoining WYLD Adventures from continuing to use the trade names WYLD and WYLD ADVENTURES pending a hearing on the merits is necessary. Plaintiff can demonstrate (1) a substantial likelihood of prevailing on the merits; (2) the plaintiff will suffer irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Int'l Snowmobile Mfrs. Ass'n. v. Norton*, 304 F. Supp. 2d 1278 (D. Wyo. 2004). Courts with jurisdiction over Lanham Act lawsuits "have power to grant injunctions, according to the principles of equity

and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office ....” 15 U.S.C. § 1116(a).  As set forth below, Plaintiff can establish that each element necessary for injunctive relief weighs heavily in its favor.

I.    **PLAINTIFF IS LIKELY TO SUCCEED ON ITS TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS BECAUSE IT CAN ESTABLISH THAT DEFENDANT'S UNAUTHORIZED USE OF ITS MARK HAS CAUSED CONSUMER CONFUSION.**

To succeed on a claim for trademark infringement and unfair competition arising under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), federal law requires the plaintiff establish (1) the mark is protectable; (2) the defendant has used an identical or similar mark in commerce without consent, and (3) the defendant's use of the protected mark is likely to confuse consumers. *Henry v. Pro 10 Originals*, *LLC*, 698 F. Supp. 2d 1279, 1282 (D. Wyo. 2010); *See also Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1050 (10th Cir.2008). The elements required to prove trademark infringement under Wyo. Stat. § 40-1-111 are substantively the same as the elements of a claim under the Lanham Act.[1] Similarly, the elements

---

[1] *"[A]ny person who shall (a) use, without the consent of the registrant, any… colorable imitation of a mark registered under this act in connection with the sale, distribution, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services, or (b)… copy or colorably imitate any such mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in conjunction with the sale or other distribution in this state of such goods or services, shall be liable to a civil action by the owner of such registered mark for any or all of the remedies provided in W.S. 40-1-112…"* Wyo. Stat. § 40-1-111; *See also Powder River Oil Co. v. Powder River Petroleum Corp.*, 830 P.2d 403 (Wyo. 1992) (*applying a similar test to the likelihood of confusion test*).

required to prove unfair competition under 15 U.S.C. § 1125(a)(1)(B) are "virtually identical" to those required to prove trademark infringement. *Utah Lighthouse Ministry*, 527 F.3d at 1050; *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004) ("to prevail in an action for unfair competition under § 43(a), a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of [an identical or similar] mark is likely to cause confusion among consumers.") (citation omitted).

Wyld 'n Pretty can establish all three required elements.

**A. Plaintiff's Mark is Protectable.**

Plaintiff holds a protected interest in the brand name "WYLD 'N PRETTY" as it pertains to its goods, services, and related commercial activities. Plaintiff's entitlement to protection of its mark is evidenced by its possession of trademark registrations from the United States Patent and Trademark Office and from the State of Wyoming in its mark. *Sadler Aff., ¶ 2-6.* "[R]egistration of a trademark serves as prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in commerce." *I-800 Contacts, Inc. v. Lens.Com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (citing 15 U.S.C. § 1115(a)). Furthermore, trademark registration provides constructive notice to others of the registrant's claim of ownership and exclusive right to use the mark in commerce. *Matal v. Tam*, co 582 U.S. 218, 226, 137 S. Ct. 1744, 1753, 198 L. Ed. 2d 366 (2017).

Plaintiff established Wyld 'n Pretty in 2019 and subsequently registered its trade name and its state trademark with the Wyoming Secretary of State in June 2020 and its federal trademark with the United States Patent and Trademark Office in September 2023. *See* Exhibits C-E to *Sadler Aff.* Plaintiff has continuously used its WYLD 'N PRETTY mark in commerce since 2019, dedicating substantial resources to promoting the mark and cultivating strong consumer

recognition and goodwill. In contrast, Defendant did not begin using the WYLD ADVENTURES

name until July 2022 and the WYLD name until 2023, over three and two years, respectively, after

Plaintiff opened its business and first began use of the mark, and one year after Plaintiff registered

its trade name and trademark with the State of Wyoming. Plaintiff's consistent use of the "WYLD

'N PRETTY" mark, coupled with its ownership of the state and federal trademark establishes that

Plaintiff satisfies the first element of its infringement and unfair competition claims.

    **B. Defendant, without authorization, uses an identical or nearly identical name to Plaintiff's mark which is likely to cause customer confusion.**

WYLD Adventures' use of the dominant and distinctive portion of Wyld 'n Pretty's

established mark in its trade name, particularly in the same market and in conjunction with

identical and substantially similar goods and services, creates a strong likelihood of consumer

confusion. What's more, individuals both within and outside the Sheridan community have

recognized and commented on their *actual* confusion between the two businesses. (*See generally

Sadler Aff.*, and *Affidavits of Molly Bradshaw, Mary Lewis, Madison Colby, Anglia Leiding, and

Mark Leiding*). The "central question in a typical infringement action… is whether the defendant's

use of the plaintiff's mark is likely to cause consumer confusion." *1-800 Contacts, Inc.,* 722 F.3d

1229, 1238 (10th Cir. 2013). The Tenth Circuit utilizes six non-exhaustive factors in determining

whether a likelihood of confusion exists between two marks: (1) the degree of similarity between

the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual

confusion; (4) the relation in use and the manner of marketing between the goods or services

marketed by the competing parties; (5) the degree of care likely to be exercised by purchasers; and

(6) the strength or weakness of the marks. *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831,

833 (10th Cir. 2005); *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089-

90 (10th Cir. 1999).

i.      **Similarity Between the Marks.**

The similarity of the marks is the "first and most important factor." *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014) (quoting *King of the Mountain Sports, Inc.*, 185 F.3d at 1091). "The degree of similarity between marks rests on sight, sound, and meaning." *Sally Beauty Co., Inc. v. Beauty Co., Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).

When evaluating whether two marks are confusingly similar, courts should "consider appearance, pronunciation of the words used, verbal translation of the pictures or designs involved, and suggestion." *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986) (*Beer Nuts II*). However, courts do not engage in a strict "side-by-side comparison"; rather, they must determine "whether the alleged infringing mark will be confusing to the public when singly presented." *Universal Money Ctrs. Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1531 (10th Cir. 1994). "[M]arks may be confusingly similar if, as entities, they look or sound similar or convey the same idea or meaning." *Beer Nuts II*, 805 F.2d at 925. Importantly, "these factors are not to be considered in isolation; they must be examined in the context of the marks as a whole as they are encountered by consumers in the marketplace." *Id*.

Moreover, similarities between marks weigh more heavily than differences, particularly when the marks are used regarding virtually identical products that are similarly packaged. *Affliction Holdings, LLC v. Utah Vap or Smoke LLC*, 935 F.3d 1112, 1115 (10th Cir. 2019). Although the marks must be compared in their entirety, a court may give more weight to the dominant elements of the parties' marks. *Universal Money Ctrs., Inc.* 22 F.3d at 1531.

As this Court and others in the Circuit have determined, the sight of two marks is confusingly similar where the marks utilize the same words. *See generally Pinnacle Construction v. Pinnacle Roofing LLC*, No. 18-CV-35-SWS, (D. Wyo. Sep. 13, 2018), attached hereto as Exhibit

"1" (Order granting Preliminary Injunction) (Finding that, among other things, the defendant's use of the plaintiff's mark "Pinnacle," in conjunction with similar goods and services within the same geographical area as the plaintiff, was likely to confuse consumers.); *see also Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1223 (D. Colo. 2001) (Finding that two marks were confusingly similar where both used the same dominant term "Bigfoot," on similar products, even where the marks differed in color and the spacing of the word.).

In the present case, the distinctive spelling of "WYLD" in the "WYLD 'N PRETTY" trademark serves to both differentiate and accentuate the similarities between the marks, particularly when compared to the use of ordinary spellings in *Pinnacle* and the conventional name "Bigfoot" in *Big O Tires*. In this regard, the present case affords the court stronger grounds to grant a preliminary injunction as compared to *Pinnacle* and *Big O Tires*. In both instances, the District Court of Colorado and the District Court of Wyoming granted preliminary injunctions on behalf of the plaintiff.

Here, WYLD Adventures has not simply used a name similar to Wyld 'n Pretty's, it has wholly copied the dominant and distinctive portion of its mark. The mark WYLD 'N PRETTY and the name WYLD and WYLD ADVENTURES share the dominant and distinctive first word— "WYLD"— which has caused consumers confusion. (*See generally Sadler Aff.*, and *Affidavits of Molly Bradshaw, Mary Lewis, Madison Colby, Anglia Leiding, and Mark Leiding*). Furthermore, WYLD Adventures' use of the added term "Adventures" after "WYLD" does not negate the likelihood of causing confusion. "[A]dding one's own name after the protected mark is an 'aggravation, and not a justification, for it is openly trading in the name of another upon the reputation acquired by the device of the true proprietor.'" *Big O Tires, Inc.*, 167 F. Supp. 2d at 1223 (citing *Menendez v. Holt,* 128 U.S. 514, 521, 9 S. Ct. 143, 32 L. Ed. 526 (1888)). WYLD

Adventures' marks look and sound like Wyld 'n Pretty's because it is a replica of Wyld 'n Pretty's mark. Although Defendant adds "Adventures" to its mark, its utilization of the same dominant and distinctive word, "WYLD," in its mark has caused and is continuing to cause consumer confusion.

Finally, the likelihood of confusion caused by WYLD Adventures is particularly acute here, as it offers identical or substantially similar products, operates in the same geographical market, and has also chosen to operate on the same street, namely, main street, and physical building previously occupied by Plaintiff. (*See generally Sadler Aff.*, and *Affidavits of Molly Bradshaw, Mary Lewis, Madison Colby, Anglia Leiding,* and *Mark Leiding*). Because Courts examine "marks as a whole as they are encountered by consumers in the marketplace" (*Beer Nuts II*, 805 F.3d at 925), the geographical market overlap of the parties, the occupation of Plaintiff's former building, and the similarity of marks used in conjunction with similar products significantly increases the potential for consumer confusion. Accordingly, this factor weighs heavily in Plaintiff's favor.

### ii.    Defendant's Intent.

WYLD Adventures' use of Wyld 'n Pretty's mark is a deliberate attempt to confuse consumers into associating its business with Wyld 'n Pretty, therefore unlawfully capitalizing on Wyld 'n Pretty's goodwill for its own benefit. "The proper focus under this factor is whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff." *Sally Beauty Co.,* 304 F.3d at 973. The Tenth Circuit has held that when a defendant uses a similar mark as another, it may create an inference that the defendant intends to deceive the public and benefit from the plaintiff's reputation or goodwill. *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485–86 (10th Cir. 1987) ("A conscious choice of a mark similar to a mark already established in the marketplace *usually* supports a finding of likelihood of confusion ...." (emphasis added)). Indeed, one who adopts a trademark similar to an existing one "does so at his own peril."

*Sally Beauty Co.* 304 F.3d at 973 ("One who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that the public will be deceived. All doubts must be resolved against him." (emphasis added)) (quoting *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 941 (10th Cir.1983) (*Beer Nuts I*)).

Although WYLD Adventures operates in the same small town as Wyld 'n Pretty, they deny having had any knowledge of Plaintiff's established business until after they had organized their business with the Wyoming Secretary of State. <u>Def.'s Countercl</u>. ¶ 17. However, WYLD Adventures admits that once they learned of the WYLD 'N PRETTY mark, they researched the Plaintiff's business and unilaterally concluded that there would be no likelihood of confusion because the "two businesses were nothing alike." *Id.,* ¶ 18. To support this declaration, WYLD Adventures claims that their research of Wyld 'n Pretty's business revealed that its focus was on, among other things, "[Wyld 'n Pretty] branded apparel and accessories." *Id.* Yet, as WYLD Adventures' Answer and Counterclaims point out, the goods in which WYLD Adventures deals are "men's, women's and children's outerwear, lifestyle clothing and tees, accessories, jewelry, purses, lotion, perfume, gear for the outdoors…"—in other words, apparel and accessories. *Id.,* ¶ 28.

WYLD Adventures' deliberate adoption of the "WYLD" name is particularly egregious given Defendant's duplication of Plaintiff's marketing and product lines. *See Sadler Aff.,* at ¶ 13; *Lewis Aff.* at ¶¶ 4 and 5; *Colby Aff.* at ¶¶ 3 and 5; *Bradshaw Aff.* At ¶ 4, *Anglia Leiding Aff.* at ¶¶ 5, 8, 9, and 10, and *Mark Leiding Aff. at* ¶¶ 5 and 6. For example, on April 5, 19, and 25, 2023, Wyld 'n Pretty advertised different articles of clothing against a wooden plank background, then, on October 15, 2023, Defendant advertised a very similar article of clothing against a virtually

indistinguishable wooden plank background.  *See Sadler Aff.* ¶ 14 and Exhibit "J" to *Sadler Aff.*
Additionally, despite being aware of potential conflicts, Defendant continues to market products
that closely mirror Wyld n' Pretty's branding, notably the "WYLD CHILD" hat. *See Anglia
Leiding Aff.* at. ¶ 8 and *Mark Leiding Aff.* at ¶¶ 5 and 6.   Even if WYLD Adventures was unaware
of Wyld 'n Pretty's existence before filing with the Wyoming Secretary of State, it undeniably
became aware of it afterward. <u>Def.'s Countercl</u>. ¶ 18. Yet, instead of rebranding to establish its
own unique market presence, WYLD Adventures has blatantly continued to mirror Wyld 'n
Pretty's brand. Wyld Adventures' conscious decision to continue using the "WYLD" mark despite
its knowledge of Wyld 'n Pretty's established brand demonstrates, at the very least, a complete
disregard for the likelihood of consumer confusion—and at worst, a deliberate attempt to exploit
that confusion for its own gain. Under these facts, Wyld Adventures' actions unmistakably reflect
an intent to mislead consumers and unlawfully trade on Wyld 'n Pretty's goodwill.

   **iii. Evidence of Actual Confusion.**

   Wyld 'n Pretty can demonstrate actual confusion. "Although not necessary to prevail on a
trademark infringement claim, evidence of actual confusion in the marketplace may be the best
indication of likelihood of confusion." *Sally Beauty Co*., 304 F.3d at 974. In cases where the
products being sold are relatively inexpensive, it is often "exceedingly difficult to detect instances
of actual confusion" *Beer Nuts II,* 805 F.2d at 928. However, the affidavits submitted herewith
provide ample evidence of actual confusion. Plaintiff is prepared to elaborate on her affidavit
testimony and to testify as to additional instances of confusion that have occurred even between
the finalization and filing of this brief with the Court.

iv.    **Similarity of Products and Marketing.**

The likelihood of confusion from WYLD Adventures' use of Wyld 'n Pretty's mark is further exacerbated where its products and marketing closely mirror those of Wyld 'n Pretty. "Under this factor, [courts] separately consider (1) the similarity of products and (2) the similarity in the manner of marketing the products." *Elevate Fed. Credit Union v. Elevations Credit Union*, 67 F.4th 1058, 1081 (10th Cir. 2023) (internal quotation marks omitted). "Typically, the greater the similarity between the products and services, the greater the likelihood of confusion." *King of the Mountain Sports, Inc.* 185 F.3d at 1093. "This is undoubtedly true when the action pertains to source or affiliation confusion." *Id.* "Similarly, the greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion." *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 556 (10th Cir. 1998).

WYLD Adventures disputes the similarity of the two parties' goods and services, claiming that Wyld 'n Pretty's focus is limited to "Western art and weddings" and citing Wyld 'n Pretty's Wyoming trade name application, which describes the general nature of its *business* as "Online retail & trade shows. Western style apparel and home décor." Def.'s Countercl. ¶ 30. However, Defendant ignores the fact that Plaintiff holds a Class 39 Wyoming trademark, which explicitly describes its *goods* as "Clothing – tops, hats, bandanas, other headwear, bottoms, shorts, sweatshirts, and tank tops," with no restriction to Western style. *Sadler Aff.* ¶ 2 and Exhibit "B" to *Sadler Aff.* Furthermore, Wyld 'n Pretty owns a federal trademark for the "WYLD 'N PRETTY" brand name that expressly covers "Short-sleeved or long-sleeved t-shirts; Sweatshirts; Hooded Sweatshirts; Baseball caps and hats; Beanies" and "Retail store services featuring a wide variety of consumer goods of others" without limiting itself to "western-style" goods and services. *Sadler Aff.* ¶ 4 and Exhibit "C" to *Sadler Aff.* In other words, Plaintiff's trademarks are not restricted to a

specific genre. Moreover, even without reference to the lack of limitations in Plaintiff's trademark registrations, Defendant's argument fails because Defendant itself sells the same Western-style clothing they claim limits Plaintiff's trademark protection, further undermining their argument about a lack of confusion.[2] *See Sadler Aff.* ¶¶ 13 and 14 and Exhibit "J" to *Sadler Aff.*

"When evaluating the marketing, we consider whether the parties are competitors in the same markets." *Elevate Fed. Credit Union* 67 F.4th at 1081. "The marketing practices of the parties are particularly relevant in a trademark infringement case because these practices directly impact the way in which consumers experience the parties' respective marks." *Heartsprings, Inc.* 143 F.3d at 556.

Both WYLD Adventures and Wyld 'n Pretty, located in Sheridan Wyoming, a major tourist town, particularly during the summer months, rely on foot traffic and word of mouth to engage customers and promote their products. As the parties are located in the same town and cater to the same market, the likelihood of direct consumer exposure to both businesses is significantly increased, leading to a heightened risk of confusion. *See Big O Tires, Inc.* 167 F. Supp. 2d (finding this factor weighed in favor of the plaintiff because consumers were likely to encounter the parties' products in similar situations and markets).

Furthermore, Defendant's social media marketing and physical store branding (e.g. street signage) closely imitates Plaintiff's branding, resulting in substantial consumer confusion. *Sadler Aff.,* ¶¶ 12, 13. This confusion is further exacerbated by the inconsistencies between the Defendant's online presence and physical storefront. The Defendant's website uses entirely

---

[2]      Wyld Adventures sells Western-themed apparel and as evidenced by its marketing on Instagram which promotes its "rodeo line" and includes photos of apparel with images depicting cowboys and cowgirls, alongside phrases such as "Bucking Wyld Ride Hard Live Free," "Wyld Cowgirl," and "Let's Rodeo Get Wyld."

different logos, fonts, and colors than those displayed at the store, creating the impression that the website and the physical store are unrelated entities. Such inconsistencies could easily cause a reasonable consumer to believe that Defendant's brick-and-mortar location is not connected to the WYLD Adventures website. Rather, consumers may draw the inference that Defendant's brick-and-mortar location is connected to Plaintiff's former brick-and-mortar location given its location, or to Plaintiff's current social media, given that the word "WYLD" may appear prominently on its own in both businesses' branding and that the clothing sold by each store is strikingly similar. Therefore, this factor too weighs heavily in favor of Plaintiff as the overlap in branding and product offerings amplifies the likelihood of consumer confusion.

### v.    Degree of care.

"A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusion." *Sally Beauty Co*., 304 F .3d at 975. "[C]onsumers are unlikely to be confused when they are likely to spend a lot of time and energy researching a service." *M Welles & Assocs., Inc. v. Edwell, Inc.*, 69 F.4th 723, 736 (10th Cir. 2023). Conversely, "buyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse." *Beer Nuts II*, 805 F.2d at 926. "Accordingly, items purchased on impulse are more likely to be confused than expensive items, which are typically chosen carefully." *Sally Beauty Co.*, 304 F.3d at 975. Because courts do not take a price-determinative approach, the proper focus is "on the consumer's degree of care exercised at the time of purchase [and] whether the item is one commonly purchased on impulse." *Hornady Mfg. Co.*, 746 F.3d at 1006 (10th Cir. 2014) (quoting *Sally Beauty Co.*, 304 F.3d at 975).

Consumers are unlikely to exercise a high degree of care when shopping for clothing, particularly in a tourist-driven market where such purchases are often made on impulse.[3] Consumers are not expected to conduct extensive research before making a decision when shopping for clothing and accessories sold in boutiques like those operated by Plaintiff and Defendant. Instead, the goods routinely bought and sold by both parties are typically purchased based on aesthetic appeal, convenience, and immediate availability basis. *See Chips "N Twigs, Inc. v. Chip-Chip, Ltd.,* 414 F. Supp. 1003, 1016 (E.D. Pa. 1976) (Finding "[M]oderately priced wearing apparel are not major investments for the average purchaser. Rather such items of clothing, being a necessity that must be obtained fairly regularly, are purchased primarily for reasons of style or appearance and with only minimal attention given to the trademark or trade name appearing on the labels."). Additionally, customers in Plaintiff's store do not typically enter seeking specific items but instead make spontaneous purchasing decisions. *Sadler Aff.,* ¶ 4.

Even if consumers were to exercise a high degree of care when purchasing clothing, Defendant's use of Plaintiff's trademark remains highly confusing. The United States District Court for the District of Colorado has recognized that even careful consumers can be confused when confronted with nearly identical trade names in the same market. In *Cent. Bancorp, Inc. v. Cent. Bancompany, Inc.,* the court held that "most consumers do not expect to find two banks

---

[3]    In a report published by Capital One, impulse purchases were determined to be an overwhelmingly common consumer behavior, with clothing being the most frequently purchased item on impulse. Moreover, consumers were estimated to spend over 3000 dollars annually on impulse purchases. Significantly, most impulse purchases were found to occur in brick-and-mortar stores rather than online, emphasizing the role of physical retail environments in driving unplanned buying decisions. *See Impulse Buying Statistics*, attached hereto as Exhibit "2", Captialoneshopping.com, (last updated Nov. 10, 2023) available at https://capitaloneshopping.com/research/impulse-buying-statistics/.

with—from their perspective—precisely the same name in the same city." 385 F. Supp. 3d 1122, 1143 (D. Colo. 2019). Because the banks had similar trade names, the court determined that "whatever amount of care banking customers normally exercise, it is thwarted to a degree the Court cannot ignore in circumstances such as these." *Id.*

The same principle applies here. No matter how much effort Plaintiff puts into distinguishing its brand, Defendant's decision to enter the same market, adopt a nearly identical trade name, and sell indistinguishable goods fundamentally undercuts any argument that Defendant's actions are unlikely to cause confusion. Therefore, this factor weighs heavily in Plaintiff's favor.

### vi.    Strength of the Mark.

"The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion." *Sally Beauty Co.* 304 F.3d at 975. "Strength has two components: conceptual strength, or the mark's place on the spectrum of distinctiveness; and commercial strength, or its level of recognition in the marketplace." *Hornady Mfg. Co.* 746 F.3d at 1007.

First, "[c]onceptual strength is measured on a spectrum of distinctiveness ranging along the following five categories (from least to most distinctive): (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Water Pik, Inc. v. Med–Systems, Inc.,* 726 F.3d 1136, 1152 (10th Cir.2013). Only suggestive, arbitrary, and fanciful marks are considered strong in and of themselves. *Id*. The "WYLD N' PRETTY" mark is inherently strong based on Plaintiff's registration of the WYLD 'N PRETTY mark with the United States Patent and Trademark Office, which "…creates a rebuttable presumption that the mark is inherently distinctive." *Sally Beauty Co.* 304 F.3d at 975.

16

Furthermore, the mark is highly distinctive in that the "WYLD N' PRETTY" mark does not describe a quality or characteristic of Wyld n' Pretty's products in ordinary language. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir.1999). Instead, the WYLD N' PRETTY mark is unique and requires consumers to use imagination or perception to connect the mark to the goods and services. *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 523 (4th Cir.2002). Additionally, the mark's uniqueness lies in its creative and imaginative nature, which captures consumer attention and distinguishes it from competitors. This distinctiveness enhances its ability to serve as a strong brand identifier, making it memorable and easily recognizable in the marketplace.

Factors for commercial strength include "…(1) the length and manner of the mark's use, (2) the nature and extent of advertising and promotion of the mark, and (3) the efforts made to promote a conscious connection, in the public's mind, between the mark and a particular product. *Water Pik*, 726 F.3d at 1154. The WYLD 'N PRETTY mark is commercially strong as it has been consistently used in commerce since as early as 2019. Additionally, the mark has been prominently featured in advertising campaigns across several various media platforms, significantly increasing its visibility. *See generally Sadler Aff.* Plaintiff has invested in strategic marketing efforts to establish a strong association between the mark and its products, resulting in high consumer recognition and loyalty. *Id.* These efforts have solidified the WYLD 'N PRETTY mark's presence in the marketplace, further enhancing its commercial strength.

Despite Defendant's allegations about third-party use of the word "WYLD", the distinctiveness of Plaintiff's mark can still be maintained. Def.'s Countercl. ¶ 29, 31, 32, 43, 59, 74. "While evidence of third-party use is not conclusive, the use of a substantially similar mark by third parties to promote the same goods or services to the same consumer class can weigh against

a finding that the consumer class associates the mark with one source." *Echo Travel Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1269 (7th Cir. 1989), citing McCarthy, Trademarks and Unfair Competition, Sec. 15:9 at 681. However, in this case, while there may be third-party use of the word "WYLD" in business names, trademarks, and trade names both in Wyoming and in the United States, there is no confusion when considering the specific goods and services alongside the similarity of the marks. Notably, there are only four Wyoming trademarks using the word "WYLD," one of which belongs to the Plaintiff. The other two are not related to clothing and retail, and the last one includes "WYLD" in a phrase that is not similar to the parties' mark, namely, "Define Your WYLD." This limited and distinct use in unrelated markets supports the argument that the "WYLD N' PRETTY" mark remains strong and distinctive.

However, in this case, the third-party analysis does not apply to Defendant because they use confusingly similar names to promote goods and services that are the same or similar to those of the Plaintiff, targeting the same consumer class. Both businesses operate in the same town, with their stores in very close proximity to each other. This situation significantly increases the likelihood of consumer confusion, as customers are more likely to associate Defendant's mark with Plaintiff's established brand. Thus, this factor too weighs in Plaintiff's favor.

## II.    PLAINTIFF WILL CONTINUE TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF

The "irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484–85 (3d Cir. 2000)). For example, the Tenth Circuit has found that "infringement alone can constitute irreparable injury and [] the movant is not required to show that it lost sales or incurred other damage." *GTE Corp. v. Williams*, 731 F.2d 676, 678

(10th Cir. 1984). Moreover, "…trademark infringement 'by its very nature' results in irreparable harm to the owner of the mark." *Amoco Oil Co. v. Rainbow Snow, Inc.*, 809 F.2d 656, 663 (10th Cir. 1987). Other courts in this Circuit have reached similar conclusions finding that "[the] loss of control over a business's reputation and loss of goodwill can constitute irreparable harm. *Equitable Nat'l Life Ins. Co., Inc. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1253 (D. Utah 2020); *See also Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131, 136 (D. Colo. 1980) (finding irreparable harm where the defendant "use[d] the [plaintiff's] trademark in a way that confuse[d] the public and deceive[d] the public into purchasing [a product with the plaintiff's trademark] of inferior quality"). Moreover, a plaintiff seeking injunctive relief under the Lanham Act is entitled to a rebuttable presumption of irreparable harm on a motion for injunctive relief where she demonstrates a likelihood of success on the merits. 15 U.S.C. § 1116(a).

Wyld 'n Pretty has demonstrated that WYLD Adventures' use of its mark creates significant customer confusion, thereby creating a significant risk that it has and will continue to lose control over its business reputation and goodwill. Customers encountering WYLD Adventures' products under a similar mark may mistakenly attribute negative experiences—whether due to lower quality, different branding, or unsatisfactory service—to Wyld 'n Pretty. Control over one's name is especially important under these circumstances, as Wyld 'n Pretty is a small business operating in a small town and relies heavily on word-of-mouth referrals to attract customers, making any loss of goodwill particularly damaging and difficult to recover.

### III.    THE HARM TO WYLD 'N PRETTY IF AN INJUNCTION DOES NOT ISSUE OUTWEIGHS THE HARM TO DEFENDANT

The balance of equity favors Wyld 'n Pretty. Although an injunction will disrupt WYLD Adventures' business, any harm they may experience is self-inflicted. *See Heartland Animal Clinic, P.A. v. Heartland SPCA Animal Med. Ctr., LLC,* 503 F. App'x 616, 623 (10th Cir. 2012)

("This court has previously concluded self-inflicted harm can weigh in favor of granting a preliminary injunction"); *See also Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007) ("…when the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement."). WYLD Adventures chose to operate using the WYLD and WYLD Adventures names after discovering Wyld 'n Pretty's existence and after multiple admonishments from Wyld 'n Pretty. (CITE). Moreover, the issuance of the injunction sought would only enjoin WYLD Adventures from engaging in conduct they are already prohibited from doing.

## IV.    GRANTING INJUNCTIVE RELIEF WOULD SERVE THE PUBLIC INTEREST

Lastly, the public interest favors Wyld 'n Pretty's request for injunctive relief. "The last preliminary-injunction factor requires that the injunction not be against the public interest." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado,* 916 F.3d 792, 807 (10th Cir. 2019). "National protection of trademarks is desirable, Congress concluded, because trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774, 112 S. Ct. 2753, 2760, 120 L. Ed. 2d 615 (1992).

Enjoining Wyld Adventure from the continued use of the WYLD brand preserves fair competition in the marketplace, prevents customer confusion, and safeguards the livelihood of Wyld 'n Pretty's owner.

## <u>CONCLUSION</u>

In sum, Wyld 'n Pretty has thoroughly satisfied all elements required to obtain a preliminary injunction to prevent Wyld Adventures from taking advantage of its creative

brand.  First and foremost, Wyld 'n Pretty undeniably has protected Wyoming and Federal Trademarks. Wyld Adventures does not.  Second, the defendant persists in the use of a substantially similar name while selling many of the same product lines in Sheridan, Wyoming. Third, the actual confusion between the two stores is abundant. Potential customers bleed away from Wyld 'n Pretty by virtue of this confusion. Finally, Wyld 'n Pretty does not have an adequate remedy at law given Defendant's continuing infringement.

For these reasons, Plaintiff respectfully requests that the Court issue a preliminary injunction prohibiting Defendant from using the Wyld mark in connection with the sale of any Wyld-branded goods or services. This prohibition should extend to all uses of the mark, including but not limited to WYLD Adventure's website, social media, domain names, signage, advertisements (both physical and electronic), business cards, stationery, and checks, pending final resolution of this case on the merits.

Dated this 30th day of January, 2025.

**MCDONOUGH LAW GROUP**

*/s/ Shelby N. Price*
Shelby N. Price, Esq. WSB No. 7-6055
1635 Foxtrail Dr. Floor
Loveland, CO 80538
Telephone: (970) 776-3311
Email: shelby@mcdonoughlawgroup.com


*/s/ Scott Olheiser*
Scott Olheiser, Esq.
Wyoming Attorney No: 6-3154
**MCDONOUGH LAW GROUP**
300 Main Street, Suite 102
Grand Junction, CO 81501
Tel: (970) 776-3311
Email: sjo@mcdonoughlawgroup.com

Of Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

In accordance with the Federal Rules of Civil Procedure, I hereby certify that on **January 30, 2025**, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** through the CM/ECF system, which cause the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Benjamin J. Rowland (7-5654)
Davis & Cannon, LLP
422 West 26th Street
Cheyenne, WY 82003
Phone: (307) 634-3210
Email: *browland@davisandcannon.com*
Attorney for Defendant

Jena R. Akin (7-5062)
Davis & Cannon, LLP
40 South Main Street
Sheridan, WY 82801
Phone: (307) 672-7491
Email: *jena@davisandcannon.com*
Attorney for Defendant

*Dana Boiler*
Dana Boiler, Paralegal
McDonough Law Group